**UNITED STATES of America,**
**Appellee,**

v.

**Anthony POLISI and Salvatore Polisi,**
**Appellants.**

**Nos. 260, 261, Dockets 32877, 32878.**

United States Court of Appeals
Second Circuit.

Argued Dec. 9, 1968.

Decided Sept. 25, 1969.

Jerome C. Ditore, Asst. U. S. Atty., Eastern District of New York (Joseph P. Hoey, U. S. Atty., on the brief), for appellee.

Peter L. F. Sabbatino, New York City, (Henry J. Boitel, and Sabbatino & Todarelli, New York City, on the brief), for appellants.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, entered April 8, 1968, Walter Bruchhausen, Judge, denying the motion of appellants Anthony and Salvatore Polisi for a new trial on the grounds of newly discovered evidence, Rule 33, Fed.R.Crim.Proc. We find error as to appellant Anthony

Polisi and reverse for a new trial. We find no error as to Salvatore Polisi, and as to him affirm the order.

On October 8, 1965 an indictment was filed in the District Court charging the appellants and four others—Cordero, Smith, Parks and Zaher—with the July 7, 1965 armed robbery of the Central Queens Savings and Loan Association, and with conspiracy to effectuate this robbery and that of the Queens County Federal Savings and Loan Association on July 30, 1965. On January 10, 1966, the first day of trial, the four additionally mentioned defendants withdrew their prior not guilty pleas, and entered pleas of guilty. In the ensuing trial, the government's case against the Polisis relied upon the testimony of three of the four confessed participants, Smith, Parks and Zaher, who described Anthony Polisi as the mastermind of a nationwide bank robbery business. Cordero was not called as a witness against the Polisis, although he was available. On January 26, 1966, a jury found Anthony Polisi guilty of the Central Queens robbery count, and found both appellants guilty of the conspiracy counts. Anthony and Salvatore Polisi were sentenced to fifteen and three year terms respectively.

The newly discovered evidence alleged in the instant case arises from a subsequent trial and conviction, which will be referred to as the Franzese trial, upon an indictment in the Eastern District of New York charging Anthony Polisi, and Cordero, Smith and Parks, together with six others (Franzese, Potere, Florio, Messineo, Matera and Crabbe), for the robbery of the Queens County Federal Savings and Loan Association on July 30, 1965 (for which the Polisis had already been convicted of conspiracy to rob), and the robbery of the United Savings and Loan Association on August 13, 1965. Appellant Salvatore Polisi was not named in these counts. At the Franzese trial, Smith, Parks, Cordero and Zaher again pleaded guilty and all testified for the government, this time, however, relegating the appellant Anthony Polisi to a relatively minor role in their description of the bank robbery operation; and instead testifying that the leadership belonged to Franzese, Potere and Florio:

The Government's case against them rested almost entirely on the testimony of four confessed participants—Smith, Parks, Cordero and Zaher—who cast defendants in the role of behind-the-scenes operators of a nationwide bank robbery business. Franzese was the general manager; Potere was the procurer and explicator of plans of the banks and took general charge of logistics; Florio assisted in these operations; * * *.

What is more troubling is that three of the Government witnesses—Smith, Parks and Zaher—had previously depicted Anthony Polisi, owner of the Aqueduct Motor Inn in Queens, as the master-mind of the same enterprise and had so testified in a trial in January, 1966, wherein Anthony and his son Salvatore were convicted, in contrast to the testimony of Smith, Parks and Cordero at the instant trial that *Anthony's services after mid-July, 1965, were in storing weapons and furnishing a meeting place. This was substantially what Cordero, who had not been called as a witness against the Polisis, had said in statements to the FBI shortly after his arrest* on September 30, 1965. United States v. Franzese, 392 F.2d 954, at 957. [emphasis added]

On appeal from the convictions in the Franzese case, this discrepancy between the testimony of Smith and Parks at the Polisi and Franzese trials was raised, on the issue of the extent to which the government was allowed to rehabilitate its witnesses after attempted impeachment based on their failure to mention the Franzese trial defendants in their testimony at the Polisi trial. In United States v. Franzese, 392 F.2d 954, 957 (2 Cir. 1968), we stated:

In fact the inconsistency was not quite so great as the appellants argue. * * The quartet, dissatisfied with Anthony Polisi's management, were summoned

to a meeting at the Aqueduct Motor Inn on an evening in late July, 1965, attended by all five appellants. [Franzese, Crabbe, Matera, Potere and Florio] Franzese announced that he was taking over, on a 50-50 basis, and that work orders would be issued by his four associates from time to time. The testimony at the Polisi trial as to the robberies of July 7 and 13, both antedating a meeting * * * where Franzese is alleged to have taken over, is consistent with the story told by the Government's witnesses in this case; *the conflict comes with the robbery of the Queens County Federal Savings & Loan Ass'n on July 30.* This court affirmed the Polisis' conviction from the bench in November, 1966; *the Government did not disclose its new information as to Anthony's less significant role in the Queens County Savings & Loan robbery.* [emphasis added]

We further noted that in their Franzese grand jury and trial testimony, Smith, Cordero and Parks testified that their failure to mention the Franzese defendants at the Polisi trial was due to fear for their lives, safety and families if they informed. 392 F.2d 957–958.

Appellants argue that the shifting testimony of the four accomplices was in fact due to the government's promising special consideration which, combined with their fear of the Franzese defendants, led them to perjure themselves. In addition, appellants maintain that their conviction was also based upon the government's misconduct in suppressing or failing to disclose the favorable statements by Cordero indicating the complicity of Franzese and the minor role played by Anthony Polisi. In support of this "conspiracy" theory, appellants rely upon admissions by Smith and Parks that they agreed with Cordero to omit Cordero's name as a participant in the robbery of the Mount Holyoke National Bank, and instead state that Salvatore Polisi went into the bank when in fact he waited outside in the "get away" car. They also rely upon a statement by Zaher that to his knowledge on October

11, 1965, Franzese had been the "boss" of the bank robberies on July 7 and 13, 1965.

The District Court rejected appellants' arguments and denied their motion for a new trial, stating that the standards established by the court in United States v. Lombardozzi, 236 F.Supp. 957 (E.D. N.Y.1964), aff'd 343 F.2d 127 (2 Cir. 1965) were not satisfied:

> The Court * * * is firmly convinced that the testimony of Cordero would only tend to impeach his own credibility and the credibility of the three named accomplices. Furthermore, the evidence produced during the trial of the defendants overwhelmingly supported the verdicts. His testimony, if called as a witness, probably would not have produced a different verdict. It would merely be cumulative.
>
> Furthermore, the motion must fail under the Larrison test, recited in the Lombardozzi case, supra, for the reason that the Court is not satisfied that the testimony of the accomplices was false in its material aspects and, to repeat, the evidence overwhelmingly established the guilt of the defendants.

## I.

The scope of review of the denial of a motion for a new trial based on newly discovered evidence is narrow. Once the trial court has made a factual determination—as to whether there has been suppression or perjury, for example—the appellate court may not intervene except "when the findings of fact are wholly unsupported by evidence; * * * it should never do so where it does not clearly appear that the findings are not supported by any evidence." United States v. Johnson, 327 U.S. 106, 111–112, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946).

## II.

The generally held essentials for a new trial based on newly discovered evidence are the following: (1) the evidence must have been discovered since the trial; (2) it must be material to the

factual issues at the trial, and not merely cumulative nor impeaching the character or credit of a witness; (3) it must be of such a nature that it would probably produce a different verdict in the event of a retrial. United States v. Costello, 255 F.2d 876 (2 Cir.), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958).

Where the conviction is shown to be based even in part upon perjured testimony, however, a court will not stop to inquire as to the precise effect of the perjury, but will order a new trial if without the perjury the jury might not have convicted. Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); Larrison v. United States, 24 F.2d 82 (7 Cir. 1928).

Similarly, the general rule does not apply where the prosecutor has suppressed evidence exculpatory of or otherwise favorable to the accused. The prosecutor has a duty not to use evidence known to be false, even if he did not instigate the perjury, and even if the evidence is relevant to punishment rather than guilt. Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957). A prosecutor's failure to disclose evidence whose high value to the defense could not have escaped him requires a new trial, even where the perjury concerns only the credibility of the witness and not the facts at issue. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2 Cir. 1964). Similarly "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

A new trial is required where the prosecutor's failure to disclose was a considered decision for the sake of ob-struction, or where the value of the evidence to the accused could not have escaped him. Where the non-disclosure is passive, i. e., not deliberate in the above senses, the courts have sometimes modified the criteria for a new trial, and instead looked to the defendant's harm, i. e., prejudice. The earlier decisions of this court have reasoned that where what is at stake is not deterrence of conduct detrimental to the integrity of the judicial system, the strong policy underlying the desired finality of judgments comes into play and requires a substantially higher probability that disclosure of the evidence to the defense would have altered the result. In Kyle v. United States, 297 F.2d 507 (2 Cir. 1961), we measured defendant's prejudice by how much the suppressed evidence would have affected the jury's verdict. Absent misbehavior by the prosecutor, or similar violation of the basic concepts of fair play, *Kyle* would require a showing that the suppressed evidence "would probably produce a different verdict." *Id.* at 514. Subsequent to *Kyle*, the Supreme Court indicated that a different standard should be applied. In Brady v. Maryland, *supra*, the Supreme Court gave a new direction to the suppression cases by looking to the interest of the defendant, rather than the prosecutor's motive, stressing that the accused's facilities to gather evidence are usually meager in comparison to those of the state. When the prosecutor aggravates defendant's lack of ability to obtain evidence by not revealing to him material evidence the Constitution is violated.

The importance of *Brady*, then, is its holding that the concept out of which the constitutional dimension arises in these cases, is prejudice to the defendant measured by the effect of the suppression upon defendant's preparation for trial, rather than its effect upon the jury's verdict. See Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136 (1964). Following this rationale, we said in United States v. Tomaiolo, 378 F.2d 26, 28 (2 Cir. 1967), that the suppression of

evidence lacking in probative force because of its speculative quality did not warrant a new trial. In order to violate the defendant's constitutional right to evidence necessary to the preparation of his defense, "[t]he evidence must also be shown to be *material and of some substantial use to the* defendant." [emphasis added]

We now turn to the application of the above criteria to the instant case. The District Court found that the accomplices' testimony was not "false in its material aspects," and that the evidence "overwhelmingly established the guilt of the accused," citing Larrison v. United States, *supra.* Apparently this finding means (1) that there was no perjury by a material witness established to the court's satisfaction, and (2) that even without the allegedly false testimony, the jury would not have reached a different verdict. These findings are supported by some evidence. The alleged conflict in the testimony of the accomplices arises out of the change of leadership of the bank-robbery organization from Anthony Polisi to Franzese in mid-July 1965; however, this finding does not directly or necessarily contradict the jury's finding that Polisi actively conspired to effectuate the July 30 Queens County Savings and Loan Ass'n. robbery, albeit with a less significant role. United States v. Johnson, *supra.*

■ The District Court's findings are inadequate, however, with respect to the suppression issue raised by appellants. As indicated above, the court found that the testimony of Cordero "would only tend to impeach his own credibility and the credibility of the three named accomplices," would be only cumulative and "probably would not have produced a different verdict." This reasoning ignores the Supreme Court's holding in *Napue, supra,* that a prosecutor's failure to disclose evidence of obvious value to the accused requires a new trial, even where the perjury concerned only the credibility of the witnesses. While the statements given by Cordero did not conclusively establish any perjury by Smith, Parks, and Zaher, it is clear that there was a definite conflict in the versions of the role played by Anthony Polisi in the robbery operations. A new trial is required even though Cordero's testimony "probably" would not have produced a different verdict, Mesarosh v. United States, *supra,* even though the testimony is perhaps more relevant to punishment than guilt, and even though the testimony's primary effect would only be to impeach the credibility of the accomplices, Alcorta v. Texas, *supra.*

Moreover, the same conclusion would result even assuming that, at the time of trial, the government could well have legitimately concluded that Cordero's testimony was merely cumulative. Under Brady v. Maryland, we must look to the prejudice to the accused of the suppression, in its effect upon his preparation for trial. It is clear, even under the standard indicated by this court in United States v. Tomaiolo, *supra,* that the evidence suppressed was material and of substantive use to Anthony Polisi. At the Polisi trial, Anthony Polisi was made to appear the mastermind of the series of robberies. Franzese was not mentioned by the accomplices, who subsequently testified that they feared for their lives and safety to implicate Franzese. At the Franzese trial, based upon an indictment returned three months after the verdict in the Polisi trial, the same accomplices testified that Franzese was the mastermind of the bank-robbery operations. While it is true that the government was permitted to rehabilitate these witnesses at the Franzese trial by introducing their testimony that a change of leadership in the robbery operations occurred in mid-July 1965, this evidence only went to the guilt or punishability of Franzese. Anthony Polisi never had the opportunity to use the differing version of Cordero to raise the issue of the credibility of the accomplices, nor to question the whole fabric of the change of leadership story.

Both versions made Anthony Polisi a participant in the robbery scheme, one as

the leader, the other as a relatively minor accomplice. But the fact that the two versions differed so drastically might well cast doubt upon the truth of either or both. It may be noted that the Polisi trial testimony not only made Anthony the leading figure in the July robberies in New York State, but in Smith's version, R. p. 439, had him setting up the subsequent more successful Salt Lake City bank robbery. While there was some corroboration in the testimony of Miss Parks that Anthony Polisi gave her $200 after Parks' arrest, and in Polisi's departing from usual registration methods when some of the robbers stayed at his motel, the crucial witnesses tying Anthony to the robberies were the three robbers. Defense counsel's only hope was to discredit their testimony, and without Cordero's statements he could point only to minor discrepancies. Moreover, government counsel on argument strongly implied that Cordero's testimony if given would have coincided with that of Smith, Parks and Zaher. He explained the finding of the indictment by the grand jury prior to the dates of the statements of Parks, Smith and Zaher by stating that he had another witness before the grand jury, Cordero. We think that the command of Brady v. Maryland, *supra*, required that the prosecutor make known to the defense the conflicting statements of Cordero as to Anthony's participation in the crime.

Moreover, while both versions support a conviction of Anthony, the discrepancy between the sentence of 3 years in the case of Salvatore, an active holdup participant, and 15 years in the case of Anthony, makes the extent of Anthony's participation appear crucial on the question of sentencing.

■ The above considerations in no way affect the District Court's decision with regard to appellant Salvatore Polisi, since the possible perjury and suppression in question is not relevant or material to his guilt or sentencing.

III.

■ Appellants further argue that they were denied their right to confrontation of Cordero who, due to his claimed conspiracy with the witnesses who testified in the Polisi trial, was in effect a witness against them, citing Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966).

■ The right does not come into play where there is an *absence* of testimony by a potential witness. In *Parker* the errant bailiff was in effect a witness before the trial jury, outside the courtroom. The Sixth Amendment safeguards the right of cross-examination, but it does not require the calling of any particular witness. Curtis v. Rives, 75 U.S.App. D.C. 66, 123 F.2d 936 (1941); Eberhart v. United States, 262 F.2d 421 (9 Cir. 1958).

Order denying new trial affirmed as to appellant Salvatore Polisi, reversed as to appellant Anthony Polisi. New trial granted as to appellant Anthony Polisi only.

MOORE, Circuit Judge (dissenting and concurring):

Since the majority opinion completely misconceives, in my judgment, both the applicable law and the facts, I must dissent. We are dealing with a specific person and a specific crime. We should address ourselves to this case and not write in generalities based upon hypotheses not here existing.

First, the facts. Anthony Polisi was convicted with others under counts one and two of the indictment of the armed robbery of the Central Queens Savings and Loan Association on July 7, 1965, and of putting lives in jeopardy in connection therewith, in violation of 18 U.S.C. § 2113(a) and (d). The date is important. He was sentenced to concurrent fifteen-year prison terms.

The motion appealed from is based upon newly discovered evidence. Thus, the only issue before us as to these counts is what evidence newly discovered

has been adduced which relates to the July 7, 1965 robbery and which would show that Anthony Polisi did not participate therein. Since the majority completely by-passes this issue, upon what do they rely? They say: "The newly discovered evidence * * * arises from a subsequent trial and conviction [in the *Franzese* case], * * * upon an indictment * * * for the robbery of the Queens County Federal Savings and Loan Association on July 30, 1965 * * * and the robbery of the United Savings and Loan Association on August 13, 1965." The July 30, 1965 robbery had been made the subject of a conspiracy charge against the Polisis and others as count three of the indictment here involved and the Polisis had also been convicted thereunder.

What evidence has been "newly discovered"? Upon examination of the majority opinion, it is discovered that it is not "evidence" at all but merely a "discrepancy between the testimony of Smith and Parks [two of the robbers] at the Polisi and Franzese trials." What then is the "discrepancy"? We have previously written on this subject in the *Franzese* appeal, 392 F.2d 954, 957 wherein we said "the conflict comes with the robbery of the Queens County Federal Savings & Loan Ass'n on July 30." Now it only remains to track down the "conflict." The conflict, according to the majority, was in testimony as to the role which Anthony Polisi played and is based primarily on the role of "master-mind" assigned to him in the *Franzese* trial "in contrast to the testimony of Smith, Parks and Cordero at the instant trial that Anthony's services after mid-July, 1965, were in storing weapons and furnishing a meeting place." The timing of the change-over in masterminding from Anthony Polisi to Franzese we have already definitely fixed (noting that "the inconsistency was not quite so great as the appellants [Franzese appeal] argue), because we wrote: "The quartet, dissatisfied with Anthony Polisi's management, were summoned to a meeting at the Aqueduct Motor Inn on an evening in

late July, 1965" at which time "Franzese announced that he was taking over." We commented that *"the Government did not disclose its new information as to Anthony's less significant role in the Queens County Savings & Loan robbery."* [Emphasis in opinion.]

Thus, in summary, the inconsistency between the *Polisi* and *Franzese* trials consisted of "relegating the appellant Anthony Polisi to a relatively minor role in their description of the bank robbery operation; and instead testifying that the leadership belonged to Franzese, Potere and Florio;". But wherein is there even any inconsistency? Rather the very assumption that there was a change in master-minding at the end of July 1965 fortifies the conclusion that Anthony Polisi was the master-mind from whom Franzese took over and that Anthony held this position on July 7, 1965, the date of the robbery for which he was convicted. Furthermore, "inconsistency" does not automatically create perjury.

If there be any inconsistency, it is in the law as applied by the majority. They correctly state that "Once the trial court has made a factual determination— as to whether there has been suppression or perjury, for example—the appellate court may not intervene except 'when the findings of fact are wholly unsupported by evidence;'. They stress this principle by stating that 'it should never do so where it does not clearly appear that the findings are not supported by any evidence.' United States v. Johnson, 327 U.S. 106, 111–112, 66 S.Ct. 464, 90 L.Ed. 562 (1946)." But then they concede that "These findings [no perjury and no difference in result] are supported by some evidence." This concession should eliminate these issues and leaves only their belief that "The District Court's findings are inadequate, however, with respect to the suppression issues raised by appellants." Suppression, of what?

In the *Franzese* trial, Cordero who, although available to both sides, had not been called in the *Polisi* trial testified that Anthony Polisi's services "after

mid-July, 1965, were in storing weapons and furnishing a meeting place." This is what he "had said in statements to the FBI shortly after his arrest on September 30, 1965." 392 F.2d at 957. It is important to note that we had previously said that "the Government did not disclose its new information as to Anthony's less significant role in the Queens County Savings & Loan robbery." But that was not the robbery made the subject of counts one and two here and Anthony's conviction thereunder, i. e., the Central Queens robbery on July 7, 1965. The very statement of a "less significant role" on July 30th implies (as the evidence established) a more significant role on July 7th before the Franzese take-over.

The majority speak in terms of obstruction and of the value of the evidence to the accused. But quite to the contrary had the Government offered Cordero's testimony on the *Polisi* trial, it would only have accentuated the difference in Anthony's role at the time of the respective robberies. The assumption of "prejudice to the accused of the suppression" is completely contrary to fact. Cordero's so-called "differing version" did not differ at all. It ignores the facts to refer to the "July robberies" because there were three separate counts in the indictment, counts one and two, the July 7th robbery and count three, the conspiracy count relating to the July 7th and July 30th robberies. The so-called new evidence only would have aided Anthony, if at all, in the conspiracy count.

The general rule governing new trials based on newly discovered evidence, in the majority's words, is that "(1) the evidence must have been discovered since the trial; (2) it must be material to the factual issues at the trial, and not merely cumulative nor impeaching the character or credit of a witness; (3) it must be of such a nature that it would probably produce a different verdict in the event of a retrial. United States v. Costello, 255 F.2d 876 (2d Cir.), cert. denied 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958)." Using this test, the district

court, below, denied appellants' motion for a new trial, see United States v. Lombardozzi, 236 F.Supp. 957 (E.D.N.Y. 1964), aff'd 343 F.2d 127 (2d Cir. 1965).

Based upon its interpretation of the rules of Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959); and Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), the majority concludes that the prosecutor should have made known to the defense the conflicting statements of Cordero to the F.B.I. as to the extent of Anthony's role in the July 30, 1965 robbery (only applicable in any event to the conspiracy count), and that his failure to do so now entitles Anthony to a new trial. The cases cited do not stand for the principles asserted and none mandate a new trial for Anthony Polisi.

In the *Mesarosh* case, *supra*, five defendants were convicted by a jury in a federal district court on one count of conspiring to violate the Smith Act (overthrow of the United States Government by force and violence). The Court of Appeals affirmed. While review was pending in the Supreme Court, the Solicitor General who had prosecuted the case, with "commendable candor," "moved to remand the case to the trial court for further proceedings because of untruthful testimony given before other tribunals * * *" by one Joseph Mazzei, one of seven Government witnesses at the trial. The motion made detailed disclosures of "bizarre" testimony given by Mazzei subsequent to the trial, much of which was positively established as untrue. The Solicitor General asked that the case be remanded so that the district court could make a determination of Mazzei's credibility at the trial, but the Court granted a new trial outright, noting that the Solicitor General conceded that without Mazzei's testimony the conviction of two of the defendants could not stand and concluding that the trial was tainted as to all defendants. Thus, *Mesarosh* merely holds that when the credibility of a principal Government

582

witness has been wholly discredited on the basis of representations by the Government itself, a new trial must be ordered. The court in *Mesarosh*, in fact, took special pains to point out the unique nature of the case, noting:

> It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense, under Rule 33 of the Federal Rules of Criminal Procedure,[1] presenting untruthful statements by a Government witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense ordinarily will not support a motion for a new trial, because new evidence which is "merely cumulative or impeaching" is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial. 352 U.S. at 9, 77 S.Ct., at 5. (Footnote ours)

Nor does Alcorta v. Texas, *supra*, establish an exception to the general rule. Alcorta was indicted in a Texas state court for stabbing his wife to death. He admitted the killing but claimed that it occurred in a fit of passion when he observed his wife, whom he already suspected of marital infidelity, kissing one Castilleja late at night. Under Texas statutes, killing under the influence of "sudden passion arising from an adequate cause * * * as would commonly produce a degree of anger * * * in a person of ordinary temper sufficient to render the mind incapable of cool reflection" is treated as murder without malice and is punishable by a maximum term of five years' imprisonment. At the trial, however, Castilleja testified that there was no romantic involvement whatsoever between him and Mrs. Alcorta and that he was merely driving her home from work on the night of the stabbing. The jury, after hearing the testimony, found Alcorta guilty of murder with malice and, as authorized by statute, sentenced him to death. Some

time after this conviction, Castilleja issued a sworn statement in which he declared that he had given false testimony at the trial. In this statement he admitted that he had in fact been Mrs. Alcorta's "lover and paramour, and had had sexual relations with her on many occasions * * *." 355 U.S. at 30, 78 S.Ct., at 105. The prosecutor, at a hearing held upon a petition for habeas corpus, admitted that he knew of the perjury, that he had not told Alcorta about Castilleja's sexual relations with Mrs. Alcorta, and that he took no steps to have Castilleja testify truthfully about his true relationship with Mrs. Alcorta. The Supreme Court, finding a violation of due process, remanded to the trial court for further proceedings, reasoning that Castilleja's testimony was seriously prejudicial to Alcorta since it squarely refuted the "sudden passion" claim. "If [Alcorta's] defense had been accepted by the jury," said the court, "as it might well have been if Castilleja had not been allowed to testify falsely to the knowledge of the prosecutor, his offense would have been reduced to 'murder without malice' precluding the death penalty now imposed upon him." 355 U.S. at 32, 78 S.Ct., at 105.

In my opinion, *Alcorta* does not establish as the majority would have it a rule which mandates a new trial where there has been suppression or perjury "even if the evidence is relevant to punishment rather than guilt." It is true that what was at stake for Alcorta was a death sentence as opposed to a maximum five-year sentence and, in that sense, the perjured testimony was material to sentencing. But the extent of the sentence to be imposed was ancillary to the central question before the Texas jury: was Alcorta, having admitted the killing, guilty of the crime of murder without malice (maximum sentence five years) or was he guilty of the crime of murder with malice (maximum sentence of death)? The *Alcorta* jury had two

---

1. The motion for a new trial in the case at bar was also brought under Rule 33 of the Federal Rules of Criminal Procedure. See Appellant's appendix, p. A–36.

separate tasks, (1) to determine which of the two crimes Alcorta was to be held responsible for, and (2) to determine, given its "broad statutory authority to determine the extent of punishment," 355 U.S. at 29, 78 S.Ct. at 104, what the length of sentence should be. The perjured testimony of Castilleja was germane primarily to the first of these two tasks.

Here by way of contrast, the newly discovered evidence pertained almost entirely to the appropriateness of the length of the sentence. Anthony Polisi, having been convicted on two counts of the crime of robbery for his part in the July 7, 1965 robbery and on one count of conspiracy to effectuate that robbery and the July 30, 1965 robbery, was sentenced to 15 years for the substantive robbery counts (pertaining only to the July 7th robbery) and to 5 years on the conspiracy count (pertaining to both the July 7th and July 30th robberies). The newly discovered evidence—that Polisi ceased to be mastermind of the robbery ring after mid-July, 1965, because of the Franzese takeover—bears only on the extent of Polisi's role in the July 30th robbery. Testimony that Polisi was providing only gun storage on July 30th, had it been presented at the trial, might have influenced the sentencing Judge to reduce the sentence on the conspiracy charge, although such a statement would be speculative. Such testimony, however, would have carried no weight as far as the 15-year sentence for bank robbery on July 7, 1965 was concerned. Hence, any possible reduction of the five-year conspiracy sentence would be immaterial. Lawn v. United States, 355 U.S. 339, 359, 392, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). To set forth *Alcorta*, therefore, for the proposition that a new trial must be ordered when newly discovered evidence of the type involved in the case at bar pertains only to sentencing, and only to the sentencing for the smallest of three concurrent sentences, is to stretch that case far beyond its intended scope.

Nor can Polisi find any shelter in *Napue, supra,* or in Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), which the majority asserts represent a rule that "[a] prosecutor's failure to disclose evidence whose high value to the defense could not have escaped him requires a new trial, even where the perjury concerns only the credibility of the witness and not the facts at issue." In *Napue*, the petitioner was allegedly involved in a murder with four other men. One Hamer, who had been convicted of the murder before Napue's apprehension, testified at the Napue trial as the State's principal witness. As the Supreme Court said:

Hamer's testimony was extremely important because the passage of time and the dim light in the cocktail lounge [where the murder took place] made eyewitness identification very difficult and uncertain, and because some pertinent witnesses had left the state. On the basis of the evidence presented, which consisted largely of Hamer's testimony, the jury returned a guilty verdict and petitioner was sentenced to 199 years. 360 U.S. at 266, 79 S.Ct., at 1175.

At Napue's trial, Hamer testified that no one had promised him anything as a reward for testifying. In fact, the assistant State's attorney had promised him consideration if he would testify and took no steps to correct Hamer's perjured testimony on this point during the trial. The Supreme Court held that Napue was entitled to a new trial because of " * * * the failure of the prosecutor to correct the testimony of the witness which he knew to be false * * *," 360 U.S. at 265, 79 S.Ct., at 1175, even though the testimony went only to the credibility of the witness. See 360 U.S. at 269, 79 S.Ct. 1173. But this language does not govern the case at bar. Nowhere does the court in *Napue* talk about the *failure to disclose* evidence of obvious value to the accused. It proscribes rather the *deliberate use* of false testimony by the prosecution, and the failure to correct such false testimony at trial. There was no such deliberate use of false testimony involved in the case at bar. Simi-

584

larly, the case of Miller v. Pate, *supra,* involved a deliberate misrepresentation of the truth by the prosecution. And in both *Miller* and *Napue,* the deliberately misrepresented evidence was material to the fact of the crime, not to the degree of participation.

Finally, the majority places central reliance on Brady v. Maryland, *supra,* for the conclusion that Anthony Polisi is entitled to a new trial. In fact, *Brady* leads to the opposite conclusion. In that case Brady and a companion, one Boblit, were found guilty of murder in the first degree and were sentenced to death by a Maryland jury. The trials of these two men were separate, with Brady being tried first. At his trial Brady took the stand and admitted participation in the crime but claimed that Boblit did the actual killing. During his summation, Brady's counsel asked that the jury return a verdict "without capital punishment." Prior to the trial Brady's counsel had requested that the prosecution permit him to examine Boblit's extrajudicial statements. Several of such statements were shown to Brady's counsel but one, in which Boblit admitted the actual homicide, was withheld by the prosecution and did not come to Brady's notice until after he had been tried, convicted and sentenced, and had exhausted the State appeals process.

After a motion for a new trial based on the newly discovered evidence that had been suppressed by the prosecution, the Maryland Court of Appeals "held that

suppression of the evidence by the prosecution denied petitioner due process of law and remanded the case for a retrial on the question of punishment,[2] not the question of guilt." 373 U.S. at 85, 83 S.Ct., at 1195. On certiorari, the Supreme Court affirmed, agreeing that "the suppression by the prosecution of evidence favorable to an accused upon request[3] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," 373 U.S. at 87, 83 S.Ct., at 1196, 1197, but holding that Brady was not "denied a constitutional right when the Court of Appeals restricted his new trial to the question of punishment." 373 U.S. at 88. Applied to the case at bar, the most that Anthony Polisi could argue under *Brady* would be that he was entitled to a resentencing on the count charging him with conspiring to rob the Queens County Federal Savings & Loan Association on July 30, 1965. But again, in view of his 15-year sentence on the substantive robbery counts, such a resentencing would be immaterial.

The notion, advanced by the majority, that *Brady* "gave a new direction to the suppression cases by looking to the interest of the defendant, rather than the prosecutor's motive [as in Kyle v. United States, 297 F.2d 507 (2d Cir. 1961)], stressing that the accused's facilities to gather evidence are usually meager in comparison to those of the state * * *" is without basis.[4] There is nothing in

2. "The Crime in question was murder committed in the perpetration of a robbery. Punishment for that crime in Maryland is life imprisonment or death, the jury being empowered to restrict the punishment to life by addition of the words 'without capital punishment.'" 373 U.S. at 85, 83 S.Ct., at 1196.

3. The case at bar can be distinguished from *Brady* on the fact, alone, that here no request was made by the prosecution similar to that made in *Brady.*

4. The only language in *Brady* which hints toward such a notion is the following,

which would need considerable stretching to be construed in the manner in which the majority apparently has construed it: "The principle of [Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. * * * A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him

the *Brady* opinion which would lead to the conclusion that "[t]he importance of *Brady,* then, is its holding that the concept out of which the constitutional dimension arises in these [suppression] cases, is prejudice to the defendant measured by the effect of the suppression upon the defendant's preparation for trial, rather than its effect upon the jury's verdict." The majority, however, insists that under *Brady* "we must look to the prejudice to the accused of the suppression, in its effect upon his preparation for trial" and that the command of *Brady* "required that the prosecutor make known to the defense the conflicting statements of Cordero as to Anthony's participation in the crime." Quite to the contrary, under *Brady*—in which the petitioner was denied a new trial on the question of guilt—Polisi is not entitled to a new trial.

In conclusion, the majority is misguided in its belief that *Brady, Napue, Alcorta* and *Mesarosh, supra,* establish exceptions to the general rule for a new trial on the basis of newly discovered evidence which are applicable to the case at bar. The majority agrees that Cordero's testimony " 'probably' would not have produced a different verdict," that "the testimony is probably more relevant to punishment than guilt" and that "the testimony's primary effect would only be to impeach the credibility of the accomplices." The district court arrived at the same conclusions. Applying, as did the district court, the general rule (United States v. Lombardozzi, 236 F.Supp. 957, 959 (E.D.N.Y.1964), aff'd 343 F.2d 127 (2d Cir. 1965); United States v. Costello, *supra*) to the facts of this case, I would hold that Anthony Polisi is not entitled to a new trial. As to Salvatore Polisi, I concur in the affirmance of the order.

or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceedings that does not comport with standards of justice, even though, as in the present case,

his action is not 'the result of guile,' to use the words of the Court of Appeals. 226 Md. at 427, 174 A.2d at 169." 373 U.S. at 87–88, 83 S.Ct., at 1197.