**UNITED STATES of America,**

v.

**John FRANZESE, also known as "Sonny," Defendant.**

**No. 66–CR–161.**

United States District Court,
E. D. New York.

Aug. 12, 1970.

Edward R. Neaher, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., Peter R. Schlam, Asst. U. S. Atty., of counsel, for the United States.

Maurice Edelbaum, New York City, James M. LaRossa, New York City, of counsel, for defendant.

*Memorandum of Decision and Order*

MISHLER, Chief Judge.

Defendant moves for a new trial on the ground of newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

The affidavit in support of the motion states that the evidence was discovered in a hearing in another criminal proceeding held before U.S. District Judge John F. Dooling, Jr., subsequent to the trial in the above matter. It was revealed in that hearing that on Friday, March 11, 1966, the Honorable Joseph P. Hoey, United States Attorney for the Eastern District of New York, together with F.B.I. Agents Thatcher and Murphy and Assistant United States Attorney Michael Gillen, visited the Federal Correctional Institution at Danbury to interview John Joseph Cordero, Richard Paul Parks, James Joseph Smith and Charles Zaher, inmates of the institution, concerning their willingness to give testimony concerning defendant and supply information concerning bank robberies committed in various parts of the country. When Mr. Hoey and his party arrived at Danbury, he interviewed the aforementioned inmates. Mr. Hoey made a memorandum of the interview on Monday, March 14, 1966.

The memorandum notes that Cordero, Parks, Smith and Zaher have indicated their willingness to testify concerning the defendant's participation in the various bank robberies. It states:

"Cordero and Zaher would be able to testify as to the direct contacts with Franzese in the planning of the bank robberies as well as the distribution of the monies. Parks and Smith would in a way be able to corroborate the testimony of the other two through conversations had with two other persons, who would also be defendants, immediately after a meeting in which Franzese discussed proposed robberies with Cordero and Zaher in a motel in Queens County."

The balance of the memorandum deals with the efforts of each inmate to obtain a promise from Mr. Hoey of the sentence that would be imposed (having already pleaded guilty to the relevant counts in the indictment) and Mr. Hoey pointing out that he would advise the sentencing judge as to their cooperation.

The trial against the defendant and four co-defendants started on January 31, 1967 and terminated on March 2, 1967 with a verdict finding defendant and his co-defendants guilty as charged in the indictment. The trial transcript is approximately 4,400 pages. The court has reread the relevant portions of the transcript. The defendant seeks an evidentiary hearing to determine whether the memorandum was producible at the trial under 18 U.S.C. § 3500 or under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On the trial record and the papers submitted on this motion, including the memorandum and the excerpt of the testimony of Mr. Hoey concerning the memorandum, I find that the court can pass on the merits of the motion without an evidentiary hearing. *United States v. Johnson*, 327 U.S. 106, 112, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946); *United States v. Troche*, 213 F.2d 401, 403 (2d Cir. 1954).

Under *Brady*, the defendant would have been entitled to evidence favorable to him. A plain reading of the memorandum is a simple answer to the claim under *Brady*. The same is true for defendant's claim that the memorandum was producible under 18 U.S.C. § 3500. A statement is defined under subdivision (e) of section 3500 as

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

▆ If the statement is "* * * the product of the investigator's selections, interpretations, and interpolations" Palermo v. United States, 360 U. S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed. 2d 1287 (1959) rather than the witness', the statement does not come within the purview of subdivision (e) of section 3500. Matthews v. United States, 407 F.2d 1371 (5th Cir. 1969); Menendez v. United States, 393 F.2d 322 (5th Cir. 1968). Thus witness sheets containing the anticipated testimony of Government witnesses not made, signed or adopted by the witness, are not producible under section 3500. United States v. Myerson, 368 F.2d 393 (2d Cir. 1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L. Ed.2d 335; Hanks v. United States, 388 F.2d 171 (10th Cir. 1968).

▆ The trial judge has discretion in determining whether statements are producible for impeachment purposes. Lloyd v. United States, 412 F.2d 1084 (5th Cir. 1969); Matthews v. United States, *supra*. The court would not have directed that the statement be produced under section 3500 or *Brady*.

A substantial part of the trial time was consumed by defendant's attack on the credibility of the testimony supplied by the four Government witnesses who were accomplices. The cross-examination was based on impeaching testimony found in prior statements made by the witnesses, including grand jury testimony given by Parks, Smith and Cordero on March 24, 1966.

▆ The burden of showing the right to a new trial rests on the moving party. United States v. Lombardozzi, 236 F.Supp. 957 (E.D.N.Y.1964), aff'd 343 F.2d 127 (2d Cir.), cert. denied 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702 (1965). The moving party is required to show that,

(1) the evidence was discovered since the trial;

(2) the newly discovered evidence is relevant to the factual issues at the trial, and not merely cumulative nor impeaching the character or credit of a witness;

(3) the newly discovered evidence is of such a nature that it would probably produce a different verdict in the event of a retrial.[1]

▆ The statement is at best impeaching evidence. It is doubtful that it could have been used effectively as such since the trial testimony appears to have fulfilled Mr. Hoey's expectations.[2] The

---

1. United States v. Polisi, 416 F.2d 573, 576 (2d Cir. 1969) citing United States v. Costello, 255 F.2d 876 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1968). The Court of Appeals in *Costello* pointed to the test laid down in Berry v. State, 10 Ga. 511, 527, in which six requirements are listed. It was there stated, "* * * a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness."

Defendant's brief seems to argue that *Polisi* modified the requirements for a new trial by eliminating the second (2) listed above. However, the Court, in *Polisi*, emphasized the high value of the suppressed evidence as a reason for not considering that requirement under the facts of *Polisi* where the suppressed testimony indicated perjury. It stated, 416 F.2d at p. 577:

"* * * A prosecutor's failure to disclose evidence whose high value to the defense could not have escaped him requires a new trial, even where the perjury concerns only the credibility of the witness and not the facts at issue. [cases cited]."

2. Cordero and Zaher testified to conversations with Franzese at the Aqueduct Motor Inn about July 21, 1965, concerning the planning of bank robberies and the distribution of the proceeds of the robberies. (Cordero, Tr.T. pp. 1782–7,

statement is not inconsistent with the trial testimony in any material respect. The transcript of the grand jury testimony of Parks and Smith, given on March 24, 1966 (which was turned over to defendant at the trial) covered in detail the information only suggested in the statement. The statement is not the kind of evidence that would probably produce a different verdict.

The motion is in all respects denied, and it is

So ordered.

1793–9, 1807, 1813, 1819–23, 1863–4, 1874–5, 1882–4, 1900–3, 1912–16, 1936–7; Zaher, Tr.T. pp. 1456–61).

Smith testified that he spoke to Florio at the bar of the Aqueduct Motor Inn on the night of the meeting while Cordero and Zaher were in conference with Franzese in an upstairs room and Florio advised him "that they had to straighten some things out * * *." (Tr.T. p. 88).

Parks testified to conversation with co-defendant Matera at the meeting in which Matera assured Parks that counsel and bail money would be supplied to the conspirators in the event that they were apprehended and their families supported (Tr.T. pp. 3373–74). Later, at the bar, co-defendants Polisi and Florio assured Parks and Smith that, "Everything is all right." (Tr.T. p. 2375). Florio also said that co-defendant "Potere is with us on this and knows quite a bit about this stuff and things should go very well." (Tr.T. p. 2377).