**UNITED STATES of America**

v.

**Robert BRADWELL.**

**Crim. No. 11675.**

United States District Court
D. Connecticut.

Nov. 21, 1968.

See also 2 Cir., 388 F.2d 619.

J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn., for the United States.

Gerald F. Stevens, Milford, Conn., for defendant Bradwell.

TIMBERS, Chief Judge.

This is a motion by defendant Robert Bradwell for a new trial. Defendant was convicted on one count of violating 18 U.S.C. § 1503 in that he endeavored to intimidate a grand jury witness, thereby obstructing the due administration of justice. Trial of the action commenced May 11, 1966 and ended May 13, 1966.

The instant motion was filed November 2, 1968, renewing an earlier motion filed January 25, 1968, which the Court had denied for lack of jurisdiction during the pendency of appellate proceedings. The denial, however, was without prejudice to renewal within 20 days after receipt by the Court of the appellate mandate. Numerous grounds were offered in support of the original motion, and the Court will construe the instant motion as incorporating them. In general, the contention of defendant is that newly discovered evidence merits granting the motion.

This Court, in ruling on a similar motion, has observed that ". . . the mere fact that additional evidence is offered subsequent to a trial does not mean that a new trial must be ordered. There are, in fact, a number of pre-conditions which must be satisfied before a new trial based on newly discovered evidence can be

granted: '(a) the evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.' It would appear inadequate for a defendant to simply show that testimony at the trial was perjured, i. e., to impeach the credibility of a witness or witnesses, rather than to show that in fact the defendant did not commit the crime." [1]

The newly discovered evidence which defendant asserts justifies the granting of a new trial is offered to the Court in the form of three affidavits, a letter, and a statement of defendant, which, assuming their truth would establish the following:

(1) Bradwell was at home at 125 Winter Street between approximately 8:00 P.M. and 11:30 P.M. on the day of the alleged offense. (Affidavit of Ernestine Caviness)

(2) Marie Erwin (who allegedly was with Bradwell at the time the threats were made) was with her brother in Stratford between 2:00 P. M. and 4:00 A.M. on the day of, and day following, the alleged offense. (Affidavit of Charles Howard Erwin)

(3) James McElroy (the main witness at the trial) in April or May, 1967 allegedly told Bradwell's daughter, in response to her question concerning why he had lied about Bradwell: "I don't care

anything about Bob, as long as I don't go to jail I could care less." (Affidavit of Pamela Lamour Williams)

(4) Rev. Clyde Davis, a customer of Leroy's News Center, claims that there never was a wall mirror in Leroy's, as testified to by McElroy. (Letter of Rev. Clyde Davis)

(5) Finally, claims of defendant himself, that the FBI knew there was no mirror in Leroy's; that McElroy lied about Bradwell in return for freedom from prosecution for stealing government checks; and that his attorney, Mr. Stevens, has a taxi log in his possession, unavailable to Bradwell at the time of his trial, which would establish that Marie Erwin was not with Bradwell at the time of the offense.

As previously stated by this Court, " . . . a motion for a new trial is addressed to the Court's discretion, it is possible that the Court would feel justified in ordering a new trial if: (1) it felt that trial testimony was indeed perjured; and (2) that 'without the perjured testimony the jury might have reached a different conclusion;' and (3) 'the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.' It therefore falls upon the Court at the outset to determine if the newly offered evidence is credible." [2]

On the present state of the record, the Court not having held a hearing to determine the credibility of the individuals whose written affidavits and statements have been submitted, the Court must make an initial determination

---

1. United States v. Capaldo, 276 F.Supp. 986, 987–88 (D.Conn.1967), conviction aff'd, 402 F.2d 821 (2 Cir. 1968), citing Johnson v. United States, 32 F.2d 127 (8 Cir. 1929); United States v. On Lee, 201 F.2d 722 (2 Cir.), cert. denied, 345 U.S. 936 (1953); United States v. Curry, 358 F.2d 904 (2 Cir.), cert. denied, 385 U.S. 873 (1966), reh. denied, 387 U.S. 949 (1967).

2. United States v. Capaldo, supra, at 988, citing United States v. On Lee, supra, at 723; United States v. Flynn, 130 F.Supp. 412, reargument denied, 131 F.Supp. 742 (S.D.N.Y.1955).

whether Bradwell is entitled to a hearing at which more fully to present this "new" evidence. The alleged statement by McElroy to Bradwell's daughter, evidence that goes to the question of Marie Erwin's presence or absence at the time and place of the alleged offense, and the existence of a mirror in the news-stand are insufficient to justify the holding of a hearing. McElroy's out-of-court statement would be "merely impeaching",[3] as would the mirror testimony; and testimony as to Marie Erwin's absence bears only on the question of the credibility of a trial witness (McElroy) and not on the guilt or innocence of defendant.

Therefore, Bradwell's motion must rest upon the statement that he was at home at the time of the offense. A preliminary determination must be made, prior to the granting of a hearing or a new trial on such evidence, as to whether it is in fact newly discovered. Why it was not available until after the trial and whether the movant was diligent in seeking to uncover it earlier does not appear; nor are there allegations of surprise at trial. However, assuming Bradwell were to establish it is newly discovered, the Caviness' testimony does not justify a new trial since it is merely cumulative.

At the trial Bradwell himself testified that "he had been hunting with two friends on December 18, had returned home after 8 P.M. and did not leave his house that evening. One of the friends corroborated this up to 9 P.M., and another male acquaintance carried the confirmation up to 10 P.M."[4] Now Caviness would carry it up to 11 or 11:30 P.M., by testimony merely cumu-lative to that of the two witnesses at the trial; if their testimony was insufficient to convince the jury that Bradwell was at home on the night of the offense, it is doubtful that this additional testimony would have affected the result.[5] A motion for a new trial based upon newly discovered evidence may be decided on the affidavits alone without taking of testimony. United States v. Johnson, 327 U.S. 106 (1946). Since on the instant motion, even assuming the truth of all the affidavits, a new trial would not be warranted, the Court denies this motion as insufficient as a matter of law.

Accordingly, defendant's motion for a new trial is denied.

---

3. See 8 Moore's Federal Practice ¶33.05, at 33–18 (2d ed. 1968). See also United States v. Troche, 213 F.2d 401, 403 (2 Cir. 1954), and Harrison v. United States, 7 F.2d 259, 262 (2 Cir. 1925), which would view such supposed recantations with "the utmost suspicion."

4. United States v. Bradwell, 388 F.2d 619, 620 (2 Cir. 1968).

5. The addition of the period from 10 to 11:30 P.M., moreover, is insignificant in that McElroy testified Bradwell threatened him at 8 or 8:30 P.M. and reappeared approximately one hour later. (Transcript, pp. 32, 44) Even if testimony concerning Bradwell's whereabouts between 10 and 11:30 P.M. were not merely cumulative, it is not relevant on the issue of guilt between 8 and 9:30 P.M.