**UNITED STATES of America**

v.

**Carmine J. PERSICO, Jr., et al., Defendants.**

**No. 60–CR–147.**

United States District Court, E. D. New York.

March 15, 1972.

Maurice Edelbaum, New York City, for defendant, Persico.

Henry J. Boitel, New York City, of Counsel, for defendant.

## DECISION AND ORDER

TRAVIA, District Judge.

The defendant, Carmine J. Persico, Jr. (hereinafter "Persico"), moves by way of an order to show cause, pursuant to Rule 33, Fed.R.Crim.P., for an order granting him a new trial upon the grounds of (a) newly discovered evidence, (b) recantation of trial testimony by the chief prosecution witness, and (c) suppression of material evidence by the prosecution; he also seeks a hearing upon his motion.[1]

The facts underlying Persico's conviction have been amply set forth in the previous opinions which have been rendered in this case by the Court of Appeals, Second Circuit, and by the United States District Court for the Eastern District of New York.[2] A brief summary of the case and the facts on which the motion is based is appropriate, however.

On April 28, 1960, an indictment was filed against Persico and several other persons charging them with various crimes arising from the July 1959 hijacking of a truck from the Akers Motor Lines terminal in Brooklyn, New York. On May 9, 1968, after the fifth in a series of five trials,[3] a jury returned a verdict of guilty against Persico and three codefendants on charges of robbery of merchandise moving in interstate commerce (18 U.S.C. § 1951) and of conspiracy to commit the robbery. Judgment of conviction was entered against Persico, and he was sentenced to terms of imprisonment of fourteen and nine years respectively on each count of the indictment, the sentences to run concurrently. The Court of Appeals, Second Circuit, affirmed the conviction, United States v. Persico, 425 F.2d 1375 (1970), and the United States Supreme Court denied certiorari, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970).

On October 21, 1970, Persico and the three codefendants with whom he was convicted commenced proceedings before the judge who had conducted the fifth trial, the Honorable John F. Dooling, Jr., for an order granting them a new trial on the basis of newly discovered evidence. After a hearing on the motion, Judge Dooling issued on June 21, 1971, a memorandum and order denying the motion. United States v. Persico, No. 60–CR–147

---

1. The defendant Persico also requested an order staying the execution of the judgment of conviction against him pending the hearing and determination of the motion for a new trial. This Court denied the requested stay.

2. See United States v. Persico, 305 F.2d 534 (1962) ; United States v. Persico, 349 F.2d 6 (1965) ; United States v. Dooling, 406 F.2d 192, cert. denied sub nom., Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969) ; United States v. Persico, 425 F. 2d 1375, cert. denied, 400 U.S. 869, 91 S. Ct. 102, 27 L.Ed.2d 108 (1970) ; United States v. Persico, No. 60–CR–147 (E.D. N.Y., filed June 21, 1971), aff'd, 454 F.2d 721 (1972).

3. The first trial, in May 1961, ended in a jury disagreement. The second trial, in June 1961, resulted in conviction of the defendant on both counts of the indictment; the conviction was reversed because of errors at trial. United States v. Persico, 305 F.2d 534 (2d Cir. 1962). The third trial was conducted in the spring of 1963 and was terminated as to the defendant Persico by the declaration of a mistrial. The fourth trial, which lasted from January to April 1964, resulted in Persico's conviction; the conviction was reversed because of errors in the trial judge's charge. United States v. Persico, 349 F.2d 6 (2d Cir. 1965). The fifth and final trial took place in April and May of 1968.

(E.D.N.Y., filed June 21, 1971). The defendants were continued on bail pending appeal.

On January 13, 1972, the Court of Appeals, Second Circuit, affirmed the denial of the motion for a new trial. United States v. Persico, 454 F.2d 721 (1972). The defendants were ordered to commence serving their sentences at 10:00 A.M. on January 27, 1972.

The motion now before this Court, brought on by way of an order to show cause, was filed on January 26, 1972 and was made returnable on February 7, 1972. Included among defendant's moving papers was an affirmation of Henry J. Boitel, who was identified as counsel to Maurice Edelbaum, attorney for Carmine Persico, Jr. The Boitel affirmation sets forth the facts which allegedly gave rise to this proceeding.

It is alleged that after having been notified that he would receive a statement from Gasper Vaccaro, the principal government witness against the defendant Persico, Mr. Edelbaum did receive, on January 25, 1972, a 20 page transcript of an unsworn statement entitled "In the Matter of the Statement of Gasper Vaccaro." The transcript is described in the moving papers as

" . . . a complete and unqualified recantation by Mr. Vaccaro of all his prior testimony implicating the defendant Persico to any degree in the crimes for which Mr. Persico stands convicted." (Boitel Affirmation, p. 3).

It is also stated that:

"Finally, it appears [from the statement] that Vaccaro has known 'from the very beginning that there was a mixup as to which hijacking the defendant had been associated with . . and this was known by the Assistant United States Attorneys who were in charge of the earlier prosecutions of this case." (Boitel Affirmation, p. 3).

It is argued that the complete and unequivocal recantation exculpating Persico and the suppression of material evidence by the prosecution call for the granting of a new trial as a matter of due process or at least in the interest of justice.

The original transcript of the Vaccaro statement has also been filed with this Court. (Defendant's Exhibit B). It was made in the presence of Frank A. Lopez, Esq., Vaccaro's attorney, on January 23, 1972, and was transcribed by one, Myron Geist, a court reporter. The statement was not sworn to by Mr. Vaccaro at the time it was made.

The statement presents the following factual situation. On January 19, 1972, his recollection of the events to which he had previously testified having been refreshed by the hearing conducted on the defendants' motion for a new trial before Judge Dooling, at which he had again testified, and by conversations with agents of the Federal Bureau of Investigation and with members of the United States Attorney's staff prior to the said hearing, Vaccaro went to the chambers of Judge Dooling to recant his trial testimony.[4] (Tr. 8, 10–12).[5] He states that he informed Judge Dooling, in the presence of the United States Attorney for the Eastern District of New York and several of his assistants, that he had been mistaken in his testimony and that the defendant, Carmine Persico, Jr., and one of his codefendants, one Hugh McIntosh, were not involved in the hijacking in question. (Tr. 10). After being advised by Judge Dooling to consult an attorney, Vaccaro contacted Mr. Lopez on January 21, 1972; his statement was transcribed on January 23, 1972. (Tr. 1, 13).

The following points are made in the statement:

(1) During the course of five trials, various hearings, and before the Grand

4. Vaccaro states that he intended to see Judge Dooling on two prior occasions, but on reaching the federal courthouse in Brooklyn, he lost his nerve. It was not

until January 19, 1972, that he "picked up enough nerve." (Tr. 16).

5. "Tr." here and hereinafter refers to the transcript of the Vaccaro statement.

Jury, Vaccaro testified that Persico was a member of the group that conspired to and did hijack a truck from the Akers Motor Lines terminal in Brooklyn, in July 1959; the testimony related to the specific crimes for which Persico was indicted, stood trial, and was convicted. (Tr. 1–2; 6; 12–13; 17).

(2) Vaccaro is cognizant of the consequences of his recantation; he realizes he is subjecting himself to a possible federal indictment for perjury and its attendant punishment. (Tr. 5; 17–18). He states that his statement is made voluntarily; without threat, pressure or promise of consideration of any kind; and that it is completely unsolicited by anyone. (Tr. 5–6; 9). He also states that although Joseph J. Marcheso, the federal prosecutor, who conducted the second, third, and fourth trials, did not live up to his bargain with him, he is not making his statement to spite anyone in the United States Attorney's Office.[6] (Tr. 16–17). Vaccaro purports to make his statement because

" . . . I feel with all the possible punishments that I am facing, I still feel inwardly that the mistakes were made from the beginning, there was a bunch of confusion, and the confusion later on was ironed out in these trials, and the mistakes were made, not intentionally, unintentionally, and then, as the years passed by, and none of them ever went to jail, and now that he was convicted on the wrong' [hijacking] through my mistake, I feel it is my duty to correct it, and that's it." (Tr. 19).

(3) Although Vaccaro informed Judge Dooling that neither Persico nor Hugh McIntosh were involved in the Akers hijacking, he now realizes after "going over in my mind" that "it wasn't so that I was mistaken there also" and that only the defendant Persico was not involved. (Tr. 10–11). It must be noted that this change in recollection occurred within four days after seeing Judge Dooling.

(4) The transcript reads in that part pertinent to the recantation of testimony implicating Persico in the crimes for which he was convicted that:

"In this particular hijacking that Carmine Persico was convicted of, I find in my mind that he was involved in other hijackings, and I have mistaken him to be part of this particular hijacking, which he had nothing to do with." (Tr. 10).

\* \* \* \* \* \*

"Q Now, Mr. Vaccaro, when did you first realize that Carmine Persico was not involved in the hijacking for which he was convicted in the District Court?

A Well, I had an idea, but I didn't really know on what hijacking he had nothing to do with, until the matter came up when the FBI and the U. S. Attorney's Office spoke to me before the hearing [on the previous motion for a new trial] and asked me who Harry O'Shea was." (Tr. 11–12).

\* \* \* \* \* \*

"Q Now, just to make sure, the hijacking that we are talking about is the one that Carmine Persico was convicted of; is that correct?

A Yes, sir.

Q Was it any specific hijacking known by any specific name?

A Akers Truck.

Q And this was the hijacking that Persico was convicted of; is that correct?

A Yes, sir." (Tr. 12).

\* \* \* \* \* \*

"Q Are you telling us now that Carmine Persico was not involved?

A Not in that particular one, no, sir.

Q Are you telling us that you were mistaken in your testimony before the Court and the Jury with regard to the participation in anyway of Carmine Persico?

A Yes, sir." (Tr. 13).

---

6. Vaccaro does not disclose what the alleged bargain involved.

\* \* \* \* \* \*

"Q  Are you telling us now unequivocally, and without a doubt, that Carmine Persico was not in any way involved with this matter, this specific matter?

A  Yes, sir." (Tr. 17).

(5) The transcript reads in that part pertinent to the suppression of evidence by the prosecution:

"A  I have known from the very beginning that there was a mixup as to which hijacking that Carmine Persico didn't have nothing to do with. I didn't know whether it was this particular one that he was convicted on, or the others." (Tr. 13–14).

\* \* \* \* \* \*

". . . as far as the facts I have known from the very beginning, after I gave the statements to the District Attorney's Office, and the FBI, and went before the Grand Jury, that they were all mixed up.

Q  Well, did you ever report this to anyone?

A  I reported this here—in fact, it was brought to my attention by an Assistant District Attorney about different matters where the car, the stolen car was found where we left it, I gave wrong statements on that also, but I didn't—in other words, I didn't know when I lit my last cigarette.

Q  What was the name of the Assistant United States Attorney that you spoke to about this?

A  I spoke to Mr. Pattison [7] and also later on another Assistant District Attorney that took over the case, Mr. Marcheso.

Q  And did you tell them that you were confused?

A  In fact, they brought it to my attention, after the FBI investigation showed that a certain stolen car was found on 39th Street, and I said we stole it the same morning, but which we didn't, we stole it maybe weeks before, that we used on these other Akers hijackings." (Tr. 14–15).

On the return date of the motion, the attorneys for the defendant Persico made application to adjourn the hearing for three weeks; supporting the application was an affidavit of actual engagement of the defendant's attorney, Mr. Edelbaum.[8] The government opposed the application on the grounds that: (1) considerable expense had been undertaken to secure the presence of witnesses in preparation for the hearing; to wit, four agents of the Federal Bureau of Investigation had been brought to New York from various parts of the country to testify; (2) a hearing on a motion for a new trial is not necessary, since such matters may be submitted on affidavits; (3) although Mr. Edelbaum was unavailable, Mr. Boitel was present to provide effective assistance of counsel; his counsel would be adequate, especially since he is familiar with the case having aided in the preparation of the appeal from the denial of the prior motion for a new trial and having prepared the motion papers on this cause.

Mr. Boitel responded that (1) he was not counsel to the defendant; (2) he was not sufficiently familiar with the details of the prior trials to furnish adequate representation; (3) Mr. Edelbaum's unavailability was caused by reasons beyond his control; and (4) a hearing was necessary to more fully develop the facts.

---

7.  Vaccaro was more than likely referring to former Assistant United States Attorney Catterson, the prosecutor in the first trial.

8.  Mr. Edelbaum stated that he was actually engaged in the trial of a homicide case in the New York State Supreme Court, Bronx County. He also stated that he has been Persico's attorney in this matter through five trials, three appeals, and a variety of collateral proceedings, including the prior motion for a new trial. He argued that he is the only one who is in the position to adequately represent the defendant concerning events which have spanned the history of the case.

This Court, noting Mr. Boitel's familiarity with the case (H. 8),[9] and especially noting the defendant's prior concern that an early hearing date be scheduled and the reliance of the government thereon (H. 5), presented to Mr. Boitel the choice of either proceeding with the hearing, submitting the matter on affidavits, or having the motion denied. (H. 19–21). Mr. Boitel chose to have the matter decided on the affidavits and with the exception of a memorandum of law and an affirmation by Mr. Maurice Edelbaum, dated February 29, 1972,[10] no other papers have been submitted. This Court ordered the Government to submit their affidavits by 5:00 P.M., February 7, 1972; the defendant's papers were ordered due on February 14, 1972.[11] Upon oral application, the time for submission of the defendant's papers was extended to February 17, 1972, the date on which they were filed. The Government's reply was received on March 6, 1972; a supplemental affidavit was received on March 13, 1972. (*See* note 10).

During the course of the February 7 hearing, Vaccaro was directed to take the stand to swear to his previously unsworn testimony. (H. 38–40).

### I.

Much of the defendant's argument is devoted to a discussion of the impropriety of this Court's deciding the motion for a new trial on the basis of affidavits and without calling witnesses. It is argued that such a course would be fraught with error, since none of the prior proceedings in this case were conducted before this Court.

In deciding a motion for a new trial, a court is bound to conduct "a thorough inquiry . . . to determine exactly what occurred." Johnson v. United States, 207 F.2d 314, 322 (5th Cir. 1953). However, a thorough inquiry does not necessarily involve the holding of a hearing. The Court of Appeals, Second Circuit, in United States v. Troche, 213 F.2d 401, 403 (1954), stated unequivocally that:

"A motion for a new trial may be decided on affidavits without the calling of witnesses. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L. Ed. 562; United States v. On Lee, 2d Cir., 201 F.2d 722, certiorari denied 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364; Ewing v. United States, 77 U.S. App.D.C. 14, 135 F.2d 633, 638, certiorari denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145."

This policy has not been qualified and it has been consistently followed by the courts within the Second Circuit. *See* United States v. Astore, 309 F.2d 144 (2d Cir. 1962); United States v. Franzese, 321 F.Supp. 993 (E.D.N.Y.1970) (Mishler, J.), aff'd, 438 F.2d 536 (2d Cir.), cert. denied, 402 U.S. 995, 91 S.Ct. 2172, 29 L.Ed.2d 161 (1971); United States v. Bradwell, 295 F.Supp. 958 (D. Conn.1968) (Timbers, J.), aff'd, 388 F. 2d 619 (2d Cir.); United States v. Miller, 277 F.Supp. 200 (D.Conn.1967), modified in part, 411 F.2d 825 (2d Cir.); *see also* 5 Orfield, Criminal Procedure Under the Federal Rules § 33:68 at 352 (1967); 2 Wright, Federal Practice and Procedure: Criminal § 557 at 533 (1969).[12]

9. "H" here and hereinafter refers to the transcript of the February 7, 1972, hearing before this Court.

10. Mr. Edelbaum felt it was incumbent upon him to supplement the memorandum of law with an affirmation discussing the relevance of the recently decided case of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Government's response to the affirmation was received on March 13, 1972.

11. It should be noted that this Court specifically reserved the right to conduct a hearing on any matter deemed appropriate, after its review of the record. (H. 20; 22; 40–41).

12. Other Circuits have applied the same rule. Ewing v. United States, 77 U.S. App.D.C. 14, 19; 135 F.2d 633, 638 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943); Gurleski v. United States, 405 F.2d 253, 267 (5th Cir. 1968); Gordon v. United States, 178 F.2d 896 (6th Cir.), cert. denied, 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353 (1949).

■ There are exceptional cases in which an oral hearing should be held, however. It is generally held that where a new trial is sought on the basis of alleged juror misconduct, a hearing is required. *See* Remmer v. United States, 347 U.S. 227, 229–230, 74 S.Ct. 450, 98 L.Ed. 654 (1954); United States v. McKinney, 429 F.2d 1019 (5th Cir. 1970), cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825; Richardson v. United States, 360 F.2d 366 (5th Cir. 1966); Ryan v. United States, 89 U.S.App.D.C. 328, 191 F.2d 779, 781 (1951), cert. denied sub nom., Duncan v. United States, 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952); *but see* United States v. Hoffa, 382 F.2d 856 (5th Cir. 1967), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed. 2d 984. In Lyles v. United States, 272 F. 2d 910 (5th Cir. 1959), on a motion for a new trial on the basis of newly discovered evidence, it was held that an oral hearing was required. The Court of Appeals, Fifth Circuit, in reversing the District Court, stressed that each of the parties had requested an oral hearing and had urged that such a hearing was advisable if not absolutely necessary. (272 F.2d at 913.[13]

■ However, this case does not involve such exceptional circumstances requiring the holding of a hearing. Although none of the prior proceedings in this case were conducted before this Court, the motion is amenable to a determination on the basis of affidavits and other papers which have been filed in this Court and upon the transcripts of all prior proceedings and trials. The nature of Vaccaro's recantation, the detailed nature of his trial testimony, his testimony in the four previous trials and before the Grand Jury, his pretrial statements, and the other circumstances of this case, all of which will be discussed *infra*, obviate the necessity of conducting a hearing on the motion.

It should also be noted that this Court has specified that it reserved the right to call necessary witnesses and to conduct a hearing if, after reviewing the entire record in the case, such a procedure were deemed appropriate. (H. 20; 22; 40–41). The defendant has had ample opportunity in which to submit affidavits supporting his case, including an affidavit of Vaccaro amplifying his recantation and particularizing the elements of his trial testimony which were recanted. No affidavits have been submitted on behalf of the defendant; nor has their absence been explained. These circumstances pose serious questions as to the truth of the recantation.

## II.

The defendant Persico urges that he be granted a new trial on the basis of the recantation of Vaccaro's trial testimony implicating him in the crimes for which he was convicted.

Before proceeding with a discussion of this argument, note should be taken of the standard of caution by which this Court is bound in entertaining the defendant's motion. The judicial experience has been characterized by disdain for motions for new trials; this stems from systemic considerations involving the finality of judgments and from the high proportion of frivolous motions of this type. New trials have been granted in appropriate cases under Rule 33, Fed. R.Crim.P., on the basis of recanted trial testimony. However, the prevailing judicial attitude is that recantation should be "looked upon with the utmost suspicion." United States v. Troche, *supra*, 213 F.2d at 403; Batsell v. United States, 403 F.2d 395, 403 (8th Cir. 1968), cert. denied, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785; United States v. Lewis, 338 F.2d 137 (6th Cir. 1964), cert. denied, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272. Indeed, it has been stated in United States v. Aviles, 197 F.Supp. 536, 540 (S.D.N.Y.1961), aff'd, 315 F.2d 186 (2d

---

13. For a general criticism of the practice of deciding motions for new trials on the basis of affidavits, *see* United States v. Hoffa, 382 F.2d 856 (5th Cir. 1967) (O'Sullivan, J., dissenting).

Cir. 1963), vacated and remanded on other grounds, Evola v. United States, 375 U.S. 32, 84 S.Ct. 24, 11 L.Ed.2d 106 (1963) that:

"The circumstances surrounding each alleged recantation incline the Court to the view that they were the result of coercion, bribery and misleading, and, therefore, entirely unworthy of belief."

*See also* Wright, *supra*, § 557 at 526.

In deciding motions for a new trial on the ground of newly discovered evidence, federal courts have generally applied the rule of Berry v. Georgia, 10 Ga. 511, 527 (1851). That rule has been stated as follows:

"[A]n applicant for a new trial on the ground of newly discovered evidence [must] show the following elements:

(a) the evidence must be in fact newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court can infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; (e) it must be such, and of such a nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

*See* United States v. Hiss, 107 F.Supp. 128, 136 (S.D.N.Y.1952), aff'd, 201 F.2d 372 (2d Cir. 1953), cert. denied, 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368 (1953); Johnson v. United States, 32 F.2d 127, 130 (8th Cir. 1929).[14]

A special rule is applied, however, where new trials are sought where an alleged recantation of trial testimony is involved or where it is proven that false testimony was given at the trial. The rule, first stated in Larrison v. United States, 24 F.2d 82, 87 (7th Cir. 1928), provides that a new trial should be granted where:

"(a) The court is reasonably well satisfied that the testimony given by the material witness is false.

(b) That without it the jury might have reached a different conclusion.

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

This test has been adopted and employed by the courts of this Circuit on numerous occasions. United States v. Troche, *supra*; United States v. Aviles, *supra*; United States v. Flynn, 130 F. Supp. 412 (S.D.N.Y.1955), reargument denied, 131 F.Supp. 742; United States v. Bradwell, *supra*; United States v. Silverman, 430 F.2d 106, 119 (2d Cir. 1970); United States v. Miller, 411 F.2d 825, 830 (2d Cir. 1969); Kyle v. United States, 297 F.2d 507, 512 (2d Cir. 1961); United States v. Gonzalez, 33 F.R.D. 276 (S.D.N.Y.1958) (Kaufman, J.); *see also* United States v. Hiss, *supra*, 107 F.Supp. at 136.

After having reviewed the entire record in this case, dating back to the filing of the indictment, the numerous exhibits filed in this proceeding, and

---

14. The Court of Appeals, Second Circuit has recently rephrased the *Berry* standard, although the substantive requirements for a new trial on the basis of newly discovered evidence remain unchanged. *See* United States v. Costello, 255 F.2d 876 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958), wherein it was stated:

"The generally held essentials for a new trial based on newly discovered evidence are the following: (1) the evidence must have been discovered since the trial; (2) it must be material to

the factual issues of the trial, and not merely cumulative nor impeaching in character or credit of the witness; (3) it must be of such a nature that it would probably produce a different verdict in event of a retrial."

*See also* United States v. Franzese, *supra*; United States v. Lombardozzi, 236 F. Supp. 957 (E.D.N.Y.1964), aff'd, 343 F. 2d 127 (2d Cir.), cert. denied, 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702; United States v. DeSapio, 456 F.2d 644 (2d Cir., filed February 25, 1972).

the transcripts of the trials, this Court is unconvinced that a new trial is warranted on the basis of Vaccaro's recantation. Most importantly, the defendant Persico has failed to meet the first criterion under the *Larrison* test, and because of the reasons which follow this Court is not "reasonably well satisfied" that Vaccaro's trial testimony was false in the light of his present recantation.

(1) Vaccaro's version [15] of Persico's participation in the hijacking has remained substantially unchanged throughout five trials, before the grand jury, and in his statements to the Federal Bureau of Investigation.[16] His statements have been detailed, and on every occasion, he has implicated Persico in the hijacking not only as a participant but as the ring leader. Subjected to enormous pressures over the past decade, Vaccaro has not altered his testimony in any of its essentials.

Judge Dooling, in denying the defendants' previous motion for a new trial, stated with reference to Vaccaro's testimony at the fifth trial that:

"Vaccaro's testimony was subjected to a cross fire of cross-examination, and contradictions and inconsistencies within it were developed to the limit. While much of the cross-examination dealt with minor and peripheral matters, no small part of it showed weaknesses in Vaccaro's testimony that were of real substance.

\* \* \* \* \* \*

If wrong in its central substance it [the testimony] afforded countless points for contradiction. When the evidence closed, however, it stood substantially uncontradicted on any material point and corroborative matter had been marshalled to its support as against each of the present defendants. . . . The credibility of the Vaccaro evidence did not derive from Vaccaro's personal credibility but lay in the objective and intrinsic credibility of the essential elements of the Vaccaro evidence. The testimony, not the witness, was credible." (Memorandum and Order at 13a).

(2) In stark contrast to Vaccaro's detailed trial testimony, implicating Persico in the hijacking and determined to have been credible by a jury and by Judge Dooling after it had been subjected to a battery of extensive cross-examinations, and in contrast to his testimony in the four previous trials and his statements before the grand jury and to various F.B.I. agents, the recantation appears as a statement characterized by brevity [17] and generalities. Moreover, the defendant Persico has been given ample opportunity to submit supporting and supplemental affidavits, including those of Vaccaro, detailing the circumstances of the hijacking as it was allegedly conducted without Persico, explaining the reasons for the "mistaken" testimony over the past decade, and particularizing which elements of his trial testimony Vaccaro is recanting. In view of the defendant's failure to produce a more specific Vaccaro affidavit or any other affidavits, or to explain their absence, the credibility of the recantation is diminished.

(3) Vaccaro readily concedes in his recantation that in his January 19, 1972 statement to Judge Dooling he claimed that he had been mistaken as to the participation of both the defendant Persico and a codefendant, Hugh McIntosh (Tr. 10–11). He now states that it was only Persico who was not involved in the hijacking. This alteration of testimony further demeans the credibility of the recantation. Here again it must be noted that this change of mind occurred within four days after talking to Judge Dooling.

(4) As previously noted, the federal judiciary looks upon recantations of trial

---

15. The Government does not contest the fact that Vaccaro's testimony was central, critical, and indispensable to its case.

16. Exhibits 1–39.

17. The substance of the recantation may be condensed to one page. *See* Defendant's Memorandum at 26–27.

testimony with the utmost suspicion, and, indeed, it has been suggested that such statements are often likely the product of fear, coercion, or bribery. *See* United States v. Aviles, *supra*. The circumstances surrounding Vaccaro's recantation clearly involve the likelihood that it is of dubious origin, to say the least. Vaccaro's fear of harm from those against whom he testified is a matter of record. At the fifth trial, he refused to disclose any residences or employments which he had had since his release from prison (Trial 1644–45, 1655–56).[18] When asked the reason for this refusal, Vaccaro responded, "I fear for my life" (Trial 1649); he also indicated that his fears stemmed from the fact of his testimony (Trial 1655). Finally Vaccaro stated to the court that:

> ". . . if I answered [the questions pertaining to his whereabouts] after this is all over, I will have to go to another state or another town. I have to start all over again." (Trial 1656).

Not only did Vaccaro feel threatened at the fifth trial, but he also expressed his fears to various federal officials throughout the entire case. As early as October 28, 1961, Vaccaro indicated, in a letter addressed to Assistant United States Attorney Marcheso, that he feared for his safety because of his testimony in the case.[19] He subsequently expressed similar fears for his family as well as himself to former United States Deputy Marshal Denson and F.B.I. agents Elofson and Fritschel.[20] Thus, in light of Vaccaro's frequent expressions of fear for his safety and that of his family, and in light of judicial experience with recantations as a product of coercion, this Court finds it unlikely that the witness would be moved to give a voluntary statement by the reasons to which he attributes his recantation, his sense of duty and the dictates of his conscience.

(5) Vaccaro's character is also a persuasive factor moving this Court to conclude that it is unlikely that he would be moved at this late date to recant, subjecting himself to a perjury prosecution, because of the dictates of his conscience. Vaccaro has spent more than twenty years of his life in penal institutions, serving sentences imposed for a variety of crimes, primarily armed robbery. (Trial 1025–39; 1411–20; 1558). As to his participation in the hijacking, Vaccaro testified that had the driver of the truck refused to cooperate, he would not have hesitated to kill him. (Trial 2091). Moreover, at the time of his initial cooperation with the Government, Vaccaro was facing the prospect of sixty years in prison as a three-time felony offender in New York State; he also testified at trial that he would not be adverse to lying in order to avoid going to prison for the rest of his life (Trial 1430, 1431, 1496, 1693–1694, 1715).

Vaccaro appears to be an unscrupulous person whose integrity is entirely suspect and whose character is eminently impeachable. As Judge Dooling carefully noted, his trial testimony was believed because it was detailed, elaborate, and substantially uncontradicted on any material point; the testimony, "not the witness," was credible. (Memorandum and Order at 13a).

(6) Vaccaro alleges that on the basis of his recollection of Harold O'Shea, an Aker's employee who was produced by the defendants at the hearing on the prior motion for a new trial and who testified that he participated in the hijacking as a "tipster," his memory has been triggered and he now realizes that he was mistaken in his testimony as to the participation of the defendant Persico. (Tr. 11–12). O'Shea and his participation in the hijacking appear to be the essential factors moving Vaccaro to realize that he was heretofore mistaken. The credibility of O'Shea's testimony as to his participation in the hijacking is a

---

18. "Trial" here and hereinafter refers to the transcript of the fifth trial in this case.

19. Exhibit 39.

20. Exhibits 29, 30 and 32.

matter which has been dealt with by Judge Dooling. He stated:

> "The credibility of O'Shea's testimony . . . [is] dubious. . . . There is a substantial element of inherent incredibility in the totally unheralded appearance of the O'Shea evidence eleven years after the robbery, and its easy acceptance by one whose testimony, given five times over the space of seven years, it impeached . . . . If the matter were for the Court to determine, it could not be and it would not on this evidence be found as a fact that O'Shea's testimony is veracious. . . ." (Memorandum and Order at 22a–23a).

Thus, O'Shea's testimony is essentially implausible. A finding that Vaccaro, his testimony unchanged throughout the case, on the basis of O'Shea's dubious testimony, has been refreshed in his recollection and honestly realizes he was mistaken as to Persico's participation in the hijacking, is beyond this Court's capacity for belief.

(7) The O'Shea testimony is important in another respect. O'Shea testified that he received $350 from Vaccaro for his tip. (Prior New Trial Hearing, 152).[21] He also testified that the July 1959 Aker's hijacking was the only one in which he ever participated. Vaccaro corroborated O'Shea's testimony; however, he also testified to another important fact. The transcript contains the following language:

> "Q Mr. Viccaro [sic], where did the $350 come from that was turned over by you to Mr. O'Shea?
>
> A It came off the top of the money that we got for the load.
>
> Q Who gave you this money?
>
> A Persico.
>
> Q And you passed it on to Mr. O'Shea?
>
> A Yes." (Prior New Trial Hearing at 486).

If O'Shea's and Vaccaro's testimony on defendant's prior motion for a new trial is to be believed, it would appear that Vaccaro paid O'Shea $350 for his participation in the Aker's hijacking, the only one in which he ever took part; and the $350 which Vaccaro paid out came from the party who was holding the proceeds from the Aker's hijacking, Carmine Persico, Jr.

(8) A final noteworthy circumstance should be considered. Vaccaro's recollection of O'Shea's participation in the hijacking was refreshed by questions posed to him by the United States Attorney's Office and the F.B.I. *prior* to the hearing on Persico's previous motion for a new trial. (Tr. 11–12). Thus, the events which allegedly precipitated Vaccaro's awareness of his error occurred prior to the hearing at which he testified. It is therefore curious that not only did Vaccaro not recant his trial testimony implicating Persico when he testified at the previous hearing, but he further implicated Persico by specifying that the $350 which he paid to O'Shea was furnished by Persico.

Therefore, in light of the foregoing, this Court is not reasonably well satisfied that the trial testimony of the material witness Vaccaro was false on the basis of his recantation. One would have to loosen himself from his mooring of reason to lend any credulity to the application before this Court.

■ It should also be noted that the defendant fails to meet the third *Larrison* criterion. He has failed to make a showing that he was taken by surprise when the false testimony was given and was unable to meet it; and he has also failed to show that he was unaware of the falsity of the testimony until after the trial. Indeed, to contend that either of such showings could be made would be absurd. No surprise was involved with the Vaccaro testimony at the fifth trial; the same testimony had been given in the four previous trials, before the

---

21. "Prior New Trial Hearing" here, and hereinafter, refers to the transcript of the hearing on defendant's prior motion for a new trial.

Grand Jury and in various statements to the Government which were furnished to the defendant. Moreover, a defense contention of ignorance of the falsity of the Vaccaro testimony until after trial would be virtually tantamount to an admission of guilt. Thus, not only does the defendant fail to meet *Larrison's* credibility standard, but he is also unable to make the required showing under part three of the *Larrison* test.[22] A new trial is, therefore, unnecessary and not required on the basis of Vaccaro's recantation.

### III.

The defendant argues that the Vaccaro recantation raises a substantial question as to whether the failure of the United States Attorney's Office to inform the defense of Vaccaro's admitted confusion concerning participation by the defendant in the crimes with which he was charged constituted a suppression of evidence violative of due process or at least calling for a new trial in the interest of justice.

The Vaccaro statement reads in that part pertinent to this argument:

"Q Well, did you ever report ['the mixup as to which hijacking the defendant was not involved in'] to anyone?

A I reported this here—in fact, it was brought to my attention by an Assistant District Attorney about different matters where the car, the stolen car was found where we left it, I gave wrong statements on that also, but I didn't—in other words, I didn't know when I lit my last cigarette.

Q What was the name of the Assistant United States Attorney that you spoke to about this?

A I spoke to Mr. Pattison[23] and also later on another Assistant District Attorney that took over the case, Mr. Marcheso.

Q And did you tell them that you were confused?

A In fact, they brought it to my attention, after the FBI investigation showed that a certain stolen car was found on 39th Street, and I said we stole it the same morning, but which we didn't, we stole it maybe weeks before, that we used on these other Akers hijackings."

■ It is clear that the function of a prosecutor encompasses far more than the securing of convictions; it is his duty as a representative of the state to see that justice is done. Therefore, in appropriate instances, the prosecutor owes a duty to advise the defendant of certain information that the prosecutor has in his possession, which is favorable to the accused, and which the accused, due to his inferior resources, is unlikely to possess. *See*, Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *cf.* Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136 (1964).

■ The Court of Appeals, Second Circuit, has defined three categories of cases involving suppression of evidence by the prosecution. United States v. Keogh, 391 F.2d 138 (2d Cir. 1968); *cf.* United States v. Mayersohn, 335 F.Supp. 1339 (E.D.N.Y., 1971). One category involves deliberate suppression; this includes not only considered decisions to suppress but also the failure to disclose evidence whose high value to the ·defense could not have escaped the prosecutor's attention. *Keogh, supra,*

22. As for *Larrison's* second criterion, that without the testimony which has been recanted the jury might have reached a different conclusion, this Court feels that the defendant might meet it. Vaccaro's testimony was not only material but was in fact the major part of the prosecution's case.

23. *See* footnote 7, *supra.*

at 147; *Napue, supra.* The second type of case is one in which the prosecution withholds evidence favorable to the accused, which is "material either to guilt or punishment," after the defendant has requested such evidence. The request serves to "flag" the importance of the evidence for the defense and thus imposes on the prosecutor the duty to make a careful check of his files. *Keogh, supra,* at 147; *Brady, supra.* In each of these two categories, the interest of the prosecutor is irrelevant; the prejudice to the defendant is the key. *See,* ABA, Standards Relating to the Prosecution Function and the Defense Function, § 3.11(a). Where suppression of evidence prejudices the defendant in the preparation of his defense and such evidence is shown to be material and of some substantial use to the defendant, the defendant's constitutional rights are violated. United States v. Polisi, 416 F.2d 573, 577–578 (2d Cir. 1969), United States v. Tomaiolo, 378 F.2d 26 (2d Cir. 1967), cert. denied, 389 U.S. 886, 88 S.Ct. 159, 19 L.Ed.2d 184.[24]

■ The third, and least defined, type of suppression case includes those cases which do not fall within the ambit of the other categories; that is, evidence that has not been requested and which is not of such obvious value that the prosecutor could not have missed it. In this type of case, hindsight discloses that the defense could have put the evidence to not insignificant use. *Keogh, supra,* at 147; United States v. DeSapio, 435 F.2d 272, 288 (2d Cir. 1970). A greater showing of materiality is generally required in this type of case and a new trial will be required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue, supra,* 360 U.S. at 271, 79 S.Ct. at 1178; *Giglio, supra,* 405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d 104.

Turning now to the merits of the defendant's argument, it involves the suppression of evidence of Vaccaro's confusion in general and more particularly suppression of Vaccaro's confusion and contradictory statements involving a stolen automobile used in the hijacking. It is argued on the basis *Giglio, supra,* that the failure to reveal facts relevant to credibility of the witness is error and a new trial is required.

Before evidence can be suppressed it is necessary that the prosecution be aware of its very existence. Vaccaro asserts that the United States Attorney's Office was aware of his confusion as to the defendant Persico's participation in the hijacking because they called to his attention his contradictory statements about the stolen car. This and nothing more has been presented to this Court as proof that the Government was aware of Vaccaro's confusion as to Persico's role in the hijacking and that they suppressed evidence of the confusion. That such meager proof has been adduced is curious in view of the ample opportunity the defendant has had in which to furnish this Court with supplemental evidence about "confusion" as to more and other aspects of his testimony implicating the defendant Persico.

The Government has submitted several affidavits in which various federal officials who were in contact with Vaccaro in connection with this case aver that he never evidenced the slightest confusion as to the role which Persico played in the Akers hijacking. The affidavits include those of F.B.I. agents James M. McAndrew, Joseph A. Murray, Max R. Fritschel, Paul R. Elofson, and James M. Beardsley and also of former Deputy United States Marshal Joseph O. Denson.[25] Each of the affiants indicates that Vaccaro's recollection of Persico's participation in the Aker's hijacking was detailed and definite; never did he

---

24. Prior to *Brady* and *Polisi,* defendant's prejudice in these cases was measured by how much the suppressed evidence would have affected the jury's verdict. A showing that the suppressed evidence "would probably produce a different verdict" was required. Kyle v. United States, 297 F.2d 507 (2d Cir. 1961).

25. Exhibits 27, 28, 29, 30, 31, and 32.

evidence the slightest confusion as to his participation. The affidavits of McAndrew and Denson are of particular importance. McAndrew states that he spoke with Vaccaro on approximately fifty occasions and not only did he seem certain of the events of which he spoke but he appeared to be "an individual with 'total recall' powers." [26] Denson states that he was charged with the assignment of guarding Vaccaro and in that capacity he "came to be very close with Gaspar Vaccaro and he confided in [Denson] repeatedly." Throughout the period of their confidential relationship, Vaccaro often discussed Persico's involvement in several hijackings and "at no time did Gaspar Vaccaro mention any doubts at all about whether or not Persico participated in the hijacking Vaccaro was testifying about at trial." [27]

The prosecutors at each of the five trials, James M. Catterson, Joseph J. Marcheso, and Victor C. Woerheide, have also submitted affidavits.[28] Each of them indicates that at no time during their contacts with Vaccaro did he express the slightest doubt in discussing Persico's role in the Aker's hijacking; he evidenced comprehensive and total recollection of the facts incriminating the defendant.[29]

The Government affidavits are highly persuasive, especially in light of Vaccaro's bare bone allegations and their subsequent unsubstantiation. Furthermore, attributing awareness of Vaccaro's confusion to the prosecution is questionable since his testimony at five trials and before the Grand Jury and his various pretrial statements were of such a detailed and elaborate nature.[30] Finally, Vaccaro's entire recantation is suspect and indeed not worthy of belief.[31]

The defendant has not placed his case within any of the three categories of suppression cases.[32] There is no evidence that the prosecution deliberately suppressed any material evidence or refused to honor a request to turn over evidence; it has also not been shown that the evidence could have been put "to not insignificant" use. See Keogh, supra, 391 F. 2d at 147; United States v. DeSapio, 456 F.2d 644 (2d Cir., filed February 25, 1972).

It is apparent that Vaccaro's alleged confusion is limited to the stolen car incident. This confusion and confusion involving other peripheral and immaterial details was thoroughly explored at trial. The defense clearly had knowledge of the nature of Vaccaro's Grand Jury testimony and his statement to the F.B.I. wherein he stated that he and one Salvatore Albanese stole the car the night before the hijacking. (Trial 1491–1492). When he testified at trial that they had stolen the car about a week before the hijacking,[33] the defense sought to impeach him by pointing out his contrasting pretrial testimony. (Trial 1491–1492).

Therefore, this Court is persuaded that defendant's attempt to demonstrate prosecutorial misconduct is frivolous and that a new trial need not be granted on

---

26. Exhibit 27.

27. Exhibit 32.

28. Exhibits 33, 34; Woerheide affidavit, dated February 9, 1972.

29. The defendant argues that the prosecution's belief in where the truth lies is irrelevant. This is uncontroverted law. *Brady, supra.* However, the Vaccaro allegations involve knowledge of facts peculiarly within the minds of the prosecution and thus the search for the truth requires prosecution statements in that regard.

30. Exhibits 1–39.

31. *See* Analysis of the credibility of Vaccaro's recantation, *supra.*

32. Reliance on *Giglio* is misplaced. That case is entirely distinguishable in that it involved the undisputed non-disclosure of a promise to an alleged co-conspirator that he would not be prosecuted if he testified against the defendant. 405 U.S. 150, 92 S.Ct. 763.

33. Trial 1308–1311; 1345; 1348–1351; 1370; 1375.

the basis of the alleged discovery of suppressed evidence.

Accordingly, it is

Ordered that the motion of the defendant Persico be and the same hereby is denied in all respects.