**UNITED STATES of America**

v.

**Milton PARNESS and Barbara Parness, Defendants.**

**No. 73 Cr. 750.**

United States District Court, S. D. New York

Sept. 29, 1975.

Motion to recall and stay mandate denied, 2 Cir., Jan. 12, 1976.

Paul J. Curran, U. S. Atty. for the Southern District of New York, New York City, for the United States; Joel N. Rosenthal, Asst. U. S. Atty., New York City, of counsel.

Saxe, Bacon, Bolan & Manley, New York City, for defendant Milton Parness; Roy M. Cohn, Michael Rosen, New York City, of counsel.

Gasthalter & Pollok, New York City, for defendant Barbara Parness; John L. Pollok, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendants Milton and Barbara Parness move pursuant to Fed.R.Cr.P. 33 for a new trial based on newly discovered evidence on the ground that "the testimony of the prosecution's witness-in-chief was false as to material matters" and "that at the time of trial the United States Attorney knew or should have known of material evidence favorable to the defendants which was not disclosed or made available to the defendants."[1] Argument was had before the Court on August 27, 1975, limited to the issue of whether a hearing was necessary on defendants' motion.

Defendant Milton Parness was convicted on October 3, 1973, by a jury, of acquiring control of the St. Maarten Isle Hotel Corporation ("Casino-Hotel") in St. Maarten, Netherlands Antilles through a pattern of racketeering in violation of 18 U.S.C. §§ 1961, 1962(b) and

---

1. Defendants also appear to move for a new trial "in the interest of justice" on the ground "that there exists evidence of material facts not heretofore presented . . . which re-quire vacation of the judgment." This motion is denied as untimely. See Fed.R.Cr.P. 33; United States v. Smith, 331 U.S. 469, 474–75, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947).

1963 (Count 1), of two counts of causing interstate transportation of stolen property, 18 U.S.C. § 2314 (Counts 4 and 5), and one count of causing a person to travel in interstate commerce in furtherance of a scheme to defraud, 18 U.S.C. § 2314 (Count 6). Milton Parness' wife, Barbara Parness, a co-defendant at this trial, was convicted on Counts 4, 5 and 6. Defendants each were sentenced on December 7, 1973. On June 27, 1974, the Second Circuit affirmed their convictions (503 F.2d 430 (2d Cir. 1974)), and on January 13, 1975 the Supreme Court denied certiorari (419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975)). Thereafter, Defendants made the instant motion for a new trial.

## I.

■ In order to grant a new trial based on newly discovered evidence, a defendant must show

"*inter alia*, (1) that the evidence was discovered after trial, (2) that it could not, with the exercise of due diligence, have been discovered sooner, (3) that it is so material that it would probably produce a different verdict." *United States v. Slutsky*, 514 F.2d 1222, 1225 (2d Cir. 1975) (citations omitted).

■ The burden of proof is a stringent one since motions for a new trial based on newly discovered evidence "are not held in great favor." *Id.*; *United States v. Catalano*, 491 F.2d 268, 274 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974). *See United States v. Franzese*, 321 F.Supp. 993 (E.D.N.Y.1970), *aff'd*, 438 F.2d 536 (2d Cir.), *cert. denied*, 402 U.S. 995, 91 S.Ct. 2172, 29 L.Ed.2d 161 (1971).

Defendants initially allege that Allan Goberman (the Government's key witness at trial) in connection with the civil action filed by him against Defendants in the United States District Court for the District of New Jersey on February 5, 1974 (four months after trial), gave testimony in a deposition which differed from that given at Defendants' trial, and

that this constituted newly discovered evidence.

■ A. Defendants first contend that in the deposition Goberman substantially modified the testimony he gave at trial as to the amount owed to him by the Casino-Hotel or Milton Parness. At trial Goberman testified that he believed he was owed approximately $400,000 in gross marker "pick ups" as of February, 1971, and stated that he relied largely upon work sheets from the Casino-Hotel showing "win-loss totals and marker pick ups" during the period from October, 1970 through January, 1971. These work sheets were received in evidence as Government's Exhibits 167 through 177. Defendants' counsel cross-examined Goberman at length with respect to his estimates and used the exhibits in his summation. Defendants' present calculations and conclusions are based solely on the same exhibits and do not constitute newly discovered evidence.

■ B. Defendants contend that Goberman's testimony at trial about the money owed him by Milton Parness in unremitted marker pick ups was false in that Goberman did not state that Parness was entitled to deduct certain commissions from the gross marker pick ups that Parness was to collect. This contention does not entitle Defendants to a new trial because of newly discovered evidence. *See United States v. Slutsky*, 514 F.2d 1222 (2d Cir. 1975). Defendants were the recipients of these commissions and Milton Parness demonstrated his knowledge of them when he testified at a hearing before this Court. In addition, Goberman referred to these commissions in his direct testimony at trial.

■ C. Defendants contend that the existence of checks constituting remittances from Milton Parness' corporation, Olympic Sports Club, Inc., to the Casino-Hotel during December, 1970 and January, 1971 which should have been credited to the amount owed to Goberman was not revealed to Defendants by the Government during or prior to trial. The trial record shows that these checks

were reflected in the evidence at trial, specifically in Government's Exhibit 155, which Defendants' counsel used for cross-examination and in summation. Moreover, the checks were written on the account of Olympic Sports Club, Inc., the corporation controlled by Milton Parness, who knew or should have known of their existence at trial. *See United States v. Slutsky, supra.*

Accordingly, none of the foregoing items constitute newly discovered evidence.

## II.

Additional claims of newly discovered evidence have been raised by Defendants since they filed their motion, which evidence they assert was known to the Government but not disclosed to Defendants at trial. Defendants contend that the Government failed to disclose to them that it had promised Goberman that it would recover for him the Casino-Hotel and that the existence of this promise is supported by statements made by Goberman on February 24, 1975 during oral argument on his motion for summary judgment in the *pro se* action he filed against Defendants in February, 1974, four months after the trial, in the District Court of New Jersey. Specifically, Defendants rely on Goberman's statement to the Court in New Jersey:

> "The reason why your Honor, I brought my claim under Section 1964D, and I may be, as you explained it, wrong is the fact that the United States government was supposed to have sued for the recovery under that act and to have recovered the hotel and returned it to me, and I'm trying to put myself in their position." Transcript, Feb. 24, 1975, at 17–18.

The Government contends that this statement *is ambiguous and, in any* event, contends that no promise of this nature was made.

Defendants also contend that letters and other documents ("letters") written

by Goberman between December, 1972 and January, 1974 to certain prosecutors who had investigated the case against Defendants[2] constituted either 3500 or *Brady* material. Defendants state that they discovered these letters in a file in an action filed in mid-1973 (apparently at approximately the time of Defendants' trial) by Goberman against the United States, 73 Civ. 2669, in the District Court for the Eastern District of Pennsylvania, seeking recovery of $60,815 taken by the Internal Revenue Service from one Sam Norber, which money Goberman contends Norber owed him as marker receipts. Defendants first contend that these letters establish that the Government promised to obtain for Goberman the $60,815 taken from Norber. Defendants also rely on: a reference in a letter dated December 13, 1972 to the government's intention "to persue [sic] the Fish-Weinberg matter . . ." and to recover monies from those persons which were allegedly obtained by fraud; a letter dated August 23, 1973 addressed to "Dear Mike" and signed "Allan"; a statement in a letter dated January 11, 1973 that "I [Goberman] trust the following two persons are in good health (1) your charming wife (2) your beautiful baby . . ."; and a statement in a letter dated January 22, 1973 "Mike, I've at all times done (anything) everything you've asked me to do . . . ." The Government concedes that these letters were in an "administrative" file in Washington, D. C. but contends that no promise was made to recover the $60,815 and that the letters themselves and Goberman's institution of the Pennsylvania lawsuit support this contention. The Government further contends that in any event the letters are neither 3500 nor *Brady* material. The government contends also that if the letters were found to be 3500 or *Brady* material, the affidavits of Harold F. McGuire, Jr., the Assistant United States Attorney representing the Government at the trial, and John M.

2. Defendants also rely upon one letter which was written by Goberman's attorney, H. Joseph Flynn, Esq., on July 31, 1973, to Harold F. McGuire, Jr., the Assistant United States Attorney who represented the Government at trial.

Dowd, the only other Government attorney who participated in the preparation of the trial, establish that failure to turn over these letters was inadvertent and that nothing in them warrants granting a new trial.

The Court notes that Defendants' contentions about Government promises to Goberman to recover his property may arise from the unusual provisions contained in the anti-racketeering statute (18 U.S.C. § 1961 *et seq.*), which provide in section 1963(a) that whoever is convicted thereunder "shall forfeit to the United States" any property acquired in violation of the statute, and in section 1963(c) that the Attorney General is authorized to seize such property and to dispose of it "as soon as commercially feasible, making due provision for the rights of innocent persons."

Of course, these provisions were known to Defendants' counsel at the time of trial and indeed were discussed informally with them by the Court on the question of their applicability to property like the Casino-Hotel, which is located on St. Maarten, Netherlands Antilles, outside the United States and hence outside of its jurisdiction.

■ In any event, the statute provided adequate basis for cross-examination of Goberman as to whether he expected to get the Casino-Hotel back as an "innocent person" and for argument before the jury that he was testifying for that purpose.

■ Defendants' contention that there is newly discovered evidence demonstrating that the Government promised Goberman that it would recover his Casino-Hotel (or remit the $60,815 taken from Norber) is without merit and does not entitle them to a new trial. A full reading of Goberman's statements at the oral argument on February 24, 1975 before the District Court in New Jersey reveals only that the statements are ambiguous and that Goberman did not understand the legal status of the Casino-Hotel (which appears to have been forfeited to

the government of the Netherlands Antilles on Goberman's failure to pay that government over $1-million). It is also noted that nothing in the letters in question suggests the existence of a promise to recover the Casino-Hotel, which promise each of the Government attorneys denies. *See Williams v. United States*, 503 F.2d 995 (2d Cir. 1974).

■ Insofar as Defendants seek a new trial on the basis of the letters found in the files of Goberman's Pennsylvania lawsuit, the Court finds that even assuming (but not so holding) that the letters were 3500 or *Brady* material, there is no basis for granting a new trial.

The Court finds that the Government's nondisclosure of these letters was inadvertent. The letters written by Goberman were each written to Department of Justice attorneys who were not involved in the trial or in its preparation. The one letter written to McGuire, the Assistant United States Attorney who represented the Government at the trial, was sent by J. Joseph Flynn, Goberman's attorney, on July 31, 1973, and merely referred to Goberman's "claim against the Internal Revenue Service for $60,-000.00, which Mr. Goberman feels is owed to the Casino . . . ." and does not suggest any promise by the Government to recover the Casino-Hotel for him. Moreover, the affidavits submitted by McGuire and Dowd establish that each was unaware of the existence of these letters which were in an "administrative" file in Washington, D. C., over which neither had control or responsibility.

Since Defendants have failed to show that "there is a significant chance that [these letters], developed by skilled counsel as [they] would have been, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction," *see United States v. Rosner*, 516 F.2d 269, 272 (2d Cir. 1975); *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973), Defendants are not

entitled to a new trial on the basis of the letters.[3]

Accordingly, Defendants' motion for a new trial is denied.

It is so ordered.

---

**3.** The Court also concludes that the findings herein, based upon the parties' extensive briefs and supporting affidavits, satisfy the require-ments of *United States v. Hilton*, 521 F.2d 164 (2d Cir. 1975) and *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975).